## ELLIOTT *vs.* DEASON.

1. If a promissory note, when made and delivered, is payable to a certain person or . • . (a blank being left suitable to the insertion of bearer or order) and afterwards the maker, for the purpose of securing the payment of the note to the payee or his assigns, executes and delivers a mortgage in which the note is described as payable to the payee or bearer, the mortgage, on a rule to foreclose the same at the instance of an assignee, will be treated as explaining the intention of the parties in respect to the blank in the note, and the note being indorsed to the assignee of the mortgage or to her trustee, will be held negotiable.

2. Negotiable paper transferred *bona fide*, whether before or after maturity, and whether for a valuable consideration or for a good con-

sideration only, is not subject in the hands of the holder to a set-off between the maker and the payee, arising subsequently to the transfer and out of transactions wholly disconnected with the paper or the contract on which it is founded.

3. When negotiable paper is assigned to a married woman, or to a naked trustee for her use, both being absent, delivery may be made to a friend acting on her behalf, and the same will be as effective as if made directly to her or to the trustee.

4. When a mortgage is assigned to a married woman, and the negotiable note which it was given to secure is also assigned, but to a naked trustee for her use, the title to both is in her, and she may foreclose the mortgage in her own name

5. A mortgage to the mortgagee and his assigns, having upon it a written assignment purporting to be made for value received, and for love and affection, the assignment bearing date before the maturity of the debt, there is some evidence, in view of the general presumptions of law, of an assignmest for value—enough to warrant the court in touching upon that subject in charging the jury.

6. Advances by a partner to carry on the partnership business are generally on the credit of the firm, and not on the separate credit of the copartner. Reimbursement involves, therefore, a settlement of the partnership accounts ; and to settle them so as to ascertain the balance, if any, due for advances, there should be an accounting between the partners, either out of court or in court. For an accounting to be had in court, both partners should be present as parties before the tribunal.

7. Parol evidence is not admissible to show that a transcript of a record from another court is incomplete. A certificate to a transcript which states that "the following and annexed writing is a true, correct and complete copy of the original on file and remaining of record in my office" is not sufficient. It should show with due certainty that the transcript embraces all that is of record or on file in the given case. Where the verdict undoubtedly should have been the same without the illegal evidence as with it, the admission of the evidence is not cause for a new trial.

Negotiable instruments. Mortgage. Trusts. Parties. Husband and wife. Partnership. Evidence. New trial. Before Judge UNDERWOOD. Floyd Superior Court. March Adjourned Term, 1879.

Mrs. Deason commenced proceedings against Elliott to foreclose a mortgage on certain real estate in Rome, executed to secure the payment of the following note :

"On or by the 9th day of January, 1872, I promise to pay W. L. Prentice, or ———, five thousand and five hundred dollars for value received, 10 per cent. interest. This January 9, 1871.

   [Signed]       J. M. ELLIOTT."

On the back of the note were several credits, not material here. Also the follwing transfer:

"For love and affection I have for my daughter, Mattie P. Deason, I hereby transfer to J. T. Deason, her husband and trustee, this note and the mortgage taken to secure the same, also the steamboat stock I hold as collateral to secure the same. Witness my hand and seal, this January 9th, 1871.

   [Signed]      W. L. PRENTICE."
"Attest : C. G. Samuel.

A mortgage was executed cotemporaneously with this note on certain property, which was subsequently taken up and canceled and a new mortgage made covering other property, dated June 8th, 1871. On this was the following transfer:

"GEORGIA—Floyd county.

For value received, and for love and affection, I hereby transfer this mortgage to my daughter, Mattie Deason, wife of J. T. Deason, now residing in Jefferson county, Alabama, and I authorize said J. T. Deason as her trustee to collect the note. This is intended to secure and control the same for my said daughter and such children as he may have by her. Witness my hand and seal, this June 8th, 1871.

  "Test : C. G. Samuel.     · W. L. PRENTICE."

The note to secure which this instrument was given was described therein as payable to "W. L. Prentice or bearer."

The defendant showed for cause against the foreclosure:

1. The general issue. 2. That the transfer was made after the maturity of the note, and was without consideration. That it was voluntary, and made when Prentice was insolvent. 3. That Prentice was, at and before the transfer, indebted to defendant $2,957.60, besides interest, for money advanced to him for his use in the partnership of Elliott & Prentice, which began on December 10th, 1871. Also various items of indebtedness arising from expenses incurred and losses in the business of said firm.

The evidence showed that the note and mortgage, at the time of the transfer, were delivered by Prentice to one Samuel for the use of Mrs. Deason, he being her brother-in-law; that the papers have been in his possession ever since. Much testimony was introduced on the subject of the partnership relations of Prentice & Elliott, advances by Elliott for the firm, losses in cotton transactions, and expenses of litigation, all of which is deemed immaterial here.

The jury found for the plaintiff. The defendant moved for a new trial on the following grounds:

1. Because the defendant proposed to prove by Samuel, one of plaintiff's witnesses, that the mortgage and note sued on had never been delivered to J. T. Deason, the trustee named in the assignment on the note and mortgage, and that he had never seen either of them, and the court refused to allow this proof to be made.

NOTE.—The court did not refuse to allow the defendant to prove any distinct fact connected with the delivery or possession of the note and mortgage.

2. Because the court refused to allow the defendant to show by D. S. Printup, that the record offered in evidence by the plaintiff of the suit of John Inman against Elliott, was but a part of the record of that suit, and because the court admitted that record in evidence against the objection of the defendant's counsel that the certificate of the clerk did not show that it was a copy of the whole of said record.

3. Because the court charged the jury as follows: "The plaintiff alleges that the note and mortgage were assigned before the note was due—it is for the plaintiff to show this. If this is shown, or if the transfer was for value, and before the maturity of the note, and without notice of any existing equities between Elliott and Prentice, then the transfer would be good, and the plaintiff would be entitled to recover."

4. Because the court charged the jury as follows: "If the transfer was made on the papers and they were not de-

livered, then the defense set up would be good up to the time the papers were delivered and as to such transactions as occurred before delivery, but if the note and mortgage were delivered to Mr. Samuel for Mrs. Deason, and she knew it, and he held them for her, then she would be liable only to such equity as existed at the time of such delivery."

5. Because the court charged the jury as follows: "You will go further and inquire whether Elliott is a creditor of Prentice, and if the indebtedness arises out of the partnership. Has that partnership been settled by a judgment of a court? Unless the partnership has been settled by a judgment of a court, how is it to be ascertained that Elliott is a creditor? If there has been no judgment of a court, then the defendant would have to show that Prentice made the transfer to shuck himself, to strip himself of his property and put it where a creditor could not get it."

The motion was overruled and defendant excepted.

J. Branham; Daniel S. Printup, for plaintiff in error.

C. Rowell, for defendant.

Bleckley, Justice.

1. The uncertainty in the note is aided by the mortgage. In the former a blank was left suitable to the insertion of the word bearer or order; and in the latter, the note is described as payable to the payee or bearer. We think there is no doubt that both documents should be treated as negotiable paper in a commercial sense.

2. The holder of a negotiable instrument has a right to dispose of it before or after due, and with or without receiving value. If, after he has parted with it *bona fide*, matter arises which would be appropriate as a set-off were he still the holder, and if such matter springs out of transactions wholly disconnected with the paper or the contract on which it is founded, his transferee, the new holder, will not be affected. Code, §2904.

3. Delivery can be made to the absent. Any friend may receive the instrument on behalf of the transferee or beneficiary. This followed by ratification would suffice.

4. A married woman may, in Georgia, take and hold property just as another person. When a mortgage is assigned to her, and the note to a naked trustee for her use, she is the owner of both, and may foreclose in her own name.

5. It is not impossible for a transaction to be founded on both a valuable and a good consideration. Money may be the motive in part and affection in part—the two combined may make up the whole consideration. The assignment of the mortgage bore date before the debt matured, and purported to be for value received, and for love and affection. There is a general presumption that negotiable paper, in the hands of a transferee, passed for value and before due, unless the contrary appears. This was enough to warrant the court in touching upon that subject in charging the jury.

6. If advances were made by Elliott to carry on the business of a partnership of which he and Prentice (Mrs. Deason's father) were members, the probability is that they were not made on the individual credit of Prentice, but on the credit of the firm. If the firm received the advances, the firm would be the debtor for them, and Elliott's reimbursement would involve a settlement of the partnership accounts. The balance ought to be ascertained, either out of court or in court. And, certainly, to have an accounting in court, the partners ought both to be present as parties to the litigation. Here only one of them was present, and for that reason, if for no other, the settlement of the partnership account was, in this suit, impracticable.

7. The transcript from the record of the United States court could not be proved by parol to be incomplete. On the other hand, the clerk's certificate was quite insufficient to authenticate it. The certificate should have gone much further than it did. But the verdict was correct, and the illegal evidence may now be ignored.

Judgment affirmed.