# CHARLESTON.

## BECKWITH *v.* LAING.

### Submitted March 2, 1909.   Decided November 16, 1909.

1. EQUITY—*Parties.*
    Ordinarily, all persons interested in the subject matter of a suit in equity should be made parties to the bill, either as plaintiffs or defendants. (p. 249).

2. APPEAL AND ERROR—*Harmless Error—Defect of Parties.*
    However it may be, in respect to right to appellate relief, when a trustee, suing as plaintiff and failing to make his *cestui que trustent* parties, obtains all the relief to which the latter could possibly be entitled, and defect of parties is relied upon in the appellate court for the first time, such imperfection in the bill affords ground of relief in the appellate court, when the objection has been made by demurrer in the court below, before it could be known what the result would be, since the defendant is entitled to have all interested parties bound by the decree. In such case, there is no waiver of this right, and the court below, at the time of overruling the demurrer, could not know whether injury would result therefrom or not. (p. 250).

3. TRUSTS—*Parties—Beneficiaries of Trusts.*
    A bill, filed by a plaintiff in his own right to enforce specific performance of a contract, exhibited with the bill, and showing that it was made with the plaintiff as trustee, is demurrable in the trial court for want of necessary parties, namely, the beneficiaries in the trust. (p. 250).

4.  SAME.

    If, in the progress of a suit in equity, it develops in any way
    that one or more of the defendants is a trustee and the bene-
    ficiaries of the trust are not made parties, no final decree should
    be entered in the cause unless such beneficiaries are made
    parties by amendment of the bill.  (p. 250).  -

5.  APPEAL AND ERROR—*Determination and Disposition of Cause—
    Inquiry into Jurisdiction.*

    On reversing a decree for want of necessary parties, the
    appellate court will enter upon no inquiry, concerning the
    merits of the cause; but it will determine whether the subject
    matter of the bill is within the jurisdiction of a court of
    equity.  (p. 251).

Appeal from Circuit Court, Raleigh County.

Specific performance by G. S. Beckwith against James Laing
and another.  Decree for complainant, and defendants appeal.

*Reversed and Remanded.*

*T. K. Laing, File & File,* and *McGinnis & Hatcher,* for
appellants.

POFFENBARGER, JUDGE:

James Laing, holding a lease of certain coal lands, executed
by S. Lewis Price and others, and purporting to vest an interest
or mining rights in him, and desiring to sell and dispose of the
same to Geo. S. Beckwith, trustee, entered into a written con-
tract with the latter, on the 14th day of March, 1906, which
forms the basis of this suit.  As the lease did not confer certain
privileges and rights, desired by Beckwith, the contract just
mentioned contemplated the procurement of certain alterations
in it by Laing, and the consummation of the sale was made
to depend somewhat upon the result of Laing's efforts in
this behalf.  The contract recited the following imperfections
in, or objections to, the lease, in the condition in which it then
was:  It gave no right to sublet the premises; nor to haul coal
through the lands from any other or adjoining lands; nor
did it include all the seams of coal in the land.  The contract
also recited a proposition on the part of Beckwith, trustee,
to purchase the lease of Laing at the price of $6,750.00, in
case he should obtain the desired changes.  It then recited the
payment to Laing of $50.00 by Beckwith, in consideration of

which the former agreed "to use his efforts to get said 'lease changed" in the respects named, and bound himself to assign and transfer it, when so changed, to Beckwith, trustee, or to such person or corporation as should answer the description of the person to be designated in the lease if changed, as the lawful person to whom it could be assigned, which sum was to be paid in cash on the date of the assignment. This contract also bound Beckwith, trustee, to purchase the lease from Laing in case the changes or alterations in it should be made. It further provided that Laing should notify Beckwith of the result of his efforts, within ten days from the date of the new lease. A further provision was this: "If the said Laing shall fail to secure all the changes herein provided, but shall obtain the right to assign and transfer said lease, then and in that event the said Beckwith, trustee, is hereby given the exclusive right to purchase said lease as changed, at the price aforesaid and upon the terms aforesaid at any time within ten days from the date said letter is mailed as aforesaid." Laing obtained all the desired alterations, but, in doing so, he allowed other alterations to be made, imposing burdens upon the lessee, not provided for in the original lease. Instead of notifying Beckwith, he telephoned his son, T. K. Laing, that he had procured the desired changes, and thereupon T. K. Laing, on the 23rd day of March, 1906, notified Beckwith by letter that the lease had been obtained in the form desired. Discovering the error, in a day or two afterwards, T. K. Laing, on the 26th of March, 1906, wrote and mailed another letter to Beckwith in which he enclosed a copy of the new lease and said he was holding both it and the old one, but was bound to re-deliver one of them to the lessors at an early date, and called upon Beckwith to notify him, within twenty-four hours of the receipt of the letter, as to whether he would accept either of them. On the 28th of March, Beckwith and McGrath wired him as follows: "Lease not according to contract and notice. Will see you Monday." To this James Laing responded as follows: "I construe wire of 28th inst. to T. K. Laing signed Beckwith & McGrath a refusal to accept lease as changed. Answer." Then Beckwith wired: "Will decide after seeing you Monday. Note terms of contract." On the second day of April, 1906, L. F. McGrath, attorney and associate of Beckwith, came to

Beckley, West Virginia, and called upon James Laing and T. K. Laing and Ashton File, the latter two then acting professedly as attorneys only, and a controversy ensued which resulted in an alleged tender by them of the two leases, for McGrath's election, and refusal on his part to accept either, and an alleged tender of the money by McGrath and refusal on the part of Laing and File, to deliver either one of the leases to him. Then this suit was instituted for specific enforcement of the contract and a *lis pendens* notice was recorded in the clerk's office of the county court. On the next day, Laing assigned the lease to Isadore Meadows, trustee, and he was made a party to the bill. James Laing and Meadows, having unsuccessfully demurred to the bill, filed their separate answers thereto, and depositions were taken, showing great conflict and contradiction, upon which the court pronounced a decree, canceling the assignment made to Meadows and requiring Laing to assign the second lease to Beckwith. From this de-decree, the defendants have appealed.

The contract of March 14, 1906, showing it had been executed to the plaintiff as trustee, was exhibited with the bill and constitutes a part thereof. While it does not disclose the names of the *cestui que trustent,* it establishes a fiduciary relation or status on the part of the plaintiff. In view of this, the court should have regarded the bill as defective, for want of necessary parties, and sustained the demurrers thereto. This was held to be a sufficient objection to the bill in *Pyle* v. *Henderson,* 55 W. Va. 122. In that case, Judge DENT said, after observing that one of the plaintiffs was suing as trustee, without naming the beneficiaries of the trust: "If such Miller is acting in the capacity of trustee for others and not in his individual capacity, such others are necessary parties that they may be bound by the decree entered, and that the defendants, if successful, may not again be compelled to relitigate the same matters with the beneficiaries in such trust, who, not being parties to the suit, would not be bound by such decree." The general rule in equity, in respect to parties, is that all persons interested in the subject matter of the suit are proper and necessary parties. *Burlew* v. *Quarrier,* 16 W. Va. 108; *Howard* v. *Stephenson,* 33 W. Va. 116; *Rexroad* v. *McQuain,* 24 W. Va. 32; *Bryan*

v. *McCann,* 55 W. Va. 372; *Hill* v. *Proctor,* 10 W. Va. 59.
There is one well recognized exception to this rule, namely,
that one or more of a numerous set of plaintiffs, all interested
alike or similarly, may sue on behalf of themselves and the
others. This rule applies the doctrine of representation and
this excuses the omission of interested parties who could have
been made defendants in a few other rare instances. It may
be that the only circumstance that will justify its applica-
tion to defendants is the impossibility of making them all
parties. An illustration of this is found in those cases in which
unborn children stand in the same class and have the same
rights as living persons, who are made parties defendant, and
are, therefore, deemed to be before the court by representation
in all proceedings for the sale of their interests. *Ammons*
v. *Ammons,* 50 W. Va. 390, 406. The decisions indicate other
exceptions, but they are apparent rather than real. Most of
them are instances in which the appellate court, after final de-
cree upon the bill, answer and proof, without the interven-
tion of a demurrer in the court below, has refused to disturb
decrees for want of persons who might properly have been
made parties, and, on account of whose absence, a demurrer
would have been sustained, if it had been interposed. It will
be found, we think, in nearly, if not quite, all such cases, that
the decrees in favor of the trustees afforded all the relief that
the *cestui que trustent* could possibly have obtained, making
it clear that no injury had resulted to the opposite parties,
and highly improbable that the beneficiaries would ever as-
sert any subsequent claim against them on account of the mat-
ters involved in the cause. This is a mere rule, pertaining to
appellate, rather than trial, practice, and is predicated on
waiver and lack of injury or prejudice, the former generally,
and the latter always, precluding relief by appellate proceed-
ings. See *Buck* v. *Pennybacker,* 4 Leigh 5; *Woodson* v. *Per-
kins,* 5 Grat. 346. There are other cases in which the relief
sought and granted could not possibly have affected the omit-
ted parties. Not being interested in the actual litigation, al-
though bearing some relation to the property or right, in re-
spect to which the suit is prosecuted, such persons are not
within the general rule. *Mayo* v. *Murchie,* 3 Munf. 258;
*Lambert* v. *Nanny,* 2. Munf. 196; *M'Clintic* v. *Manns,* 4 Munf.

328. This case does not belong to any of these real or apparent exceptions to the rule. While the decree gives to the plaintiff all the beneficiaries of the trust could possibly have obtained, the defect of parties is not urged for the first time in this Court, as in some of the cases to which reference has been made. The defendants, having challenged the sufficiency of the bill in *limine,* cannot be deemed to have waived or lost the benefit of the objection. If they had made the objection here for the first time, and the decree appeared to be right in all other respects, this Court, seeing that no harm could ever come to them by reason of the failure of the trustee to make the beneficiaries of his trust parties, we might, consistently with the principle applied in some of the cases mentioned, refuse to entertain it. But if the decree, viewed as one on the merits, were wrong, or gave less than the fullest possible relief to the plaintiff, this reasoning would fail. Whether such decisions are sound in principle, we are not now called upon to decide.

On the hearing it appeared from the proof that Laing also is a trustee and the names of the beneficiaries in his trust were fully disclosed. This, too, is ground of reversal, although it may not have been brought to the attention of the court below. *Ralphsnyder* v. *Titus,* 63 W. Va. 469; *Reger* v. *Gall,* 54 W. Va. 373; *Gallatin Land &c. Co.* v. *Davis,* 44 W. Va. 109. Some of these cases are authority for the further proposition that the omission of necessary parties may be disclosed by the evidence adduced. If it appears in any way by the record that a final decree has been rendered in the absence of necessary parties, such decree will be reversed and the cause remanded so that proper parties may be made.

Though, in such cases, the court will enter upon no inquiry as to the merits, the cause will not be remanded, unless the subject matter of the bill appears to be within the jurisdiction of a court of equity. It would be useless to remand a cause, so plainly beyond the jurisdiction of the court as to make manifest the impossibility of its retention in any form. Contrary to the views expressed by counsel for the appellants we think the subject matter of this bill is one of equitable cognizance. Although the lease in controversy may be technically personal property, it pertains to, and vests

rights in, land, and a contract for the sale thereof is analogous to a contract for the sale of land. The remedy at law, for breach thereof, is obviously inadequate. Equity jurisdiction in such cases is sustained by authority as well as reason and principle. *Gas Co.* v. *Oil Co.,* 56 W. Va. 402, 415; *Oil Co.* v. *Oil Co.,* 47 W. Va. 84, 102; *Bettman* v. *Harness,* 42 W. Va. 433; *West Va. &c.* v. *Vinal,* 14 W. Va. 637; 26 A. & E. Enc. Law 104.

For the reasons stated, the decree must be reversed and the cause remanded, with leave to the plaintiff to amend his bill.

*Reversed and Remanded.*