# CHARLESTON.

NICKEL PLATE LAND COMPANY *v.* C. R. BROOM *et al.*

Submitted May 20, 1924.    Decided May 29, 1924.

1. CORPORATIONS—*Promoters Cannot by Fraudulent Concealment and Misrepresentation Secure Secret Profits Arising from Sale of Real Estate to Corporation.*

    Those who promote a corporation stand in a fiduciary relation to such corporation, and they can not by a scheme of fraudulent concealment and misrepresentation as to their personal interest in a transaction secure to themselves secret profits arising from a sale of real estate to the corporation. (p. 592).

2. SAME—*Fact That Promoters Secured Option on Real Estate, as Individuals, Which They Turned Over to Corporation at Profit, Held No Defense.*

    In an action by the corporation against such promoters to recover secret profits so secured, it is no defense for defendants to show that they as individuals secured an option on the property a short time before they began soliciting stock subscriptions, where it is clear that they secured such option for the purpose of turning the property over to the corporation at an advanced price and that they in their negotiations with the stockholders concealed their personal interest in the transaction, and falsely represented that they were making no profit out of the sale to the corporation. (p. 593).

3. SAME—*False Representations of Promoters to Subscribing Stockholders Admissible in Action Against Promoters for Secret Profits.*

    In such a case the corporation as such has a clear right to recover the full amount of the secret profits, and the false representations of the promoters to the subscribing stockholders is competent evidence upon a trial in an action therefor. (p. 594).

Error to Circuit Court, Cabell County.

Action by the Nickel Plate Land Company against C. R. Broom and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Paul W. Scott* and *Darnall & Lovins,* for plaintiffs in error.

· *George S. Wallace,* for defendant in error.

MEREDITH, PRESIDENT:

Defendants, Broom and Trent, were the active promoters of the Nickel Plate Land Company, which company is now suing in assumpsit to recover certain secret profits alleged to have been secured by said promoters in connection with the sale of real estate to the plaintiff. The circuit court entered judgment for plaintiff on a verdict of $4000.00 in its favor, and defendants are here on writ of error.

Defendants do not deny, in fact they stipulate in the record, that they made a profit of $8000.00 in the transaction in question; their defense is that having as individuals acquired an option on the real estate they were free to negotiate a sale with a third party, even though that third party was a corporation of their own promotion, so long as it was promoted subsequent to the option purchase, and that in doing so they were under no obligation or duty to disclose their personal interest in the transaction. They further assert that as a matter of fact they neither misrepresented nor concealed anything in regard to the matter.

Many facts are undisputed. On February 1, 1921, defendants secured a written option to purchase from W. A. Sydenstricker and wife, at any time before April 1, 1921, a ten acre parcel of land near the city of Huntington. The purchase price was fixed in the option at $12,000.00, to be paid partly in cash, and partly by the execution or assumption of notes. The option having been acquired, defendants set about to finance the proposition, which they accomplished by organizing the plaintiff company. This was effected by defendants securing stock subscriptions in the proposed corporation aggregating $20,000.00, including their own subscriptions of $1000.00 each, and the ultimate incorporation of plaintiff company, March 24, 1921, with an authorized capital stock of $20,000.00. Substantially all the stock subscriptions were secured during the period between the securing of the option by defendants and the incorporation of plaintiff, and it is not denied that defendants solicited all

of them. The jury seemingly found, and we do not think it could be doubted from the evidence that all of the stock was sold upon defendant's representations that the company had an opportunity to purchase the ten acre tract of land for $20,000.00, and that each subscriber, including defendants, was to share the profits to be derived from the resale of the property in lots according to their stock holdings. On the day following the issuance of the corporate charter, March 25, 1921, the first meeting of the stockholders was held; the five original incorporators, including defendants, and their attorney who acted as secretary, were present, one of them, Mullins, by proxy; by-laws were adopted; and it was reported to the meeting that a proposition had been made whereby the company could purchase the ten acres of land for $20,-000.00. The same five incorporators were elected directors and they were authorized and directed to effect the purchase. Defendant Broom was elected vice-president. No stockholder except the five was notified of the stockholders' meeting, or, so far as the record shows, had an opportunity to be present.

The deed was executed March 31, 1921. By it Sydenstricker and wife conveyed the property to the plaintiff corporation. The recited consideration was $1.00 cash in hand paid the assumption by plaintiff of 6 purchase money notes of the grantors (shown in the record to be for $500.00 each), and four notes executed by plaintiff as follows: One for $5500, one for $3000, and two for $1500 each. It is shown that the cash payment was in fact $5500; so there is no dispute but that plaintiff either paid or obligated itself to pay $20,000 for the land. Likewise, it is not denied that defendants received out of the purchase price the $5500 note and $2500 of the cash payment.

As heretofore stated, defendants deny that they concealed their personal profits from the other stockholders of the plaintiff; and likewise deny that they were under any duty to disclose their personal interest in the deal.

We do not see how we can say anything in support of defendants' position that they were not guilty of concealment and misrepresentation. There were not more than twenty subscribers to the stock of the plaintiff company, and fourteen

of them testified for the plaintiff in this record. Not one of the fourteen, so far as is shown, had any knowledge that defendants were deriving commissions from the sale of the land to the company. Some of them understood that defendants were to have commissions on the lots that the company might subsequently sell, in addition to their dividends from their stock; further than that they thought it was a share and share alike proposition in proportion to stock ownership. They were led to believe this not only by the verbal representations of defendants when soliciting the subscriptions, but by letters written by defendants and by the printed prospectus of the corporation, which was in the form of an introduction to the subscription list. The letter of February 8, 1921, from defendant Trent to B. C. Harris, later a stockholder, plainly illustrates the tactics employed. It reads:

"Dear Mr. Harris:
"Mr. Broom and I have secured an option on the Meyers farm in Altizer addition just above the new Nickel Plate Plant for $20,000.00, this farm is all level and will cut into 82 lots that are now according to other prices asked adjoining worth $600.00 each, with the land we get one seven room frame dwelling which we can sell at once for $5000.00 including a lot, and also there are three other out buildings with enough material in them to complete two additional small four room dwellings that can be sold for $3500.00 each, making a total property that can readily be sold out at $60,000.00.

"We will incorporate a company under the laws of West Virginia with a capital stock of $20,000.00 to take over this land and property, and are securing the subscription of 20 stockholders for one thousand each, terms are $275.00 cash with subscription, $275.00 June 1st, balance evidenced by three notes for $150.00 each, due in six, twelve, and eighteen months from June 1st. The latter notes will never have to be paid by subscriptions as the selling will take care of that. We only need a few more subscribers to complete this stock, and I want you to send me your check by return mail for $275.00 for an interest of $1000.00 and I will make you some more money.

"Take it from me, old friend, and act quickly."

We see no reason why we should be charitable in the con-

struction of this letter. The first statement which appears therein shows not mere concealment of private interest, but positive misrepresentation of the grossest character. While there is perhaps no positive misrepresentation in the prospectus, of which defendants seem to have been the authors, it served to persuade the subscribers that they were entering upon an undertaking in which each subscriber stood upon an equal footing.

One stockholder, Mullins, testified for the defendants, but the most that can be made of his evidence is that he considered the property worth $20,000.00 and that he did not know what profit was being made out of it.

Defendants attempt to make much of the fact that several of the stockholders were familiar with the land and knew its value, but that would not excuse defendants' deceit. The stockholders did not learn of defendants' secret profits for many months, not prior to the fall of 1922 at the earliest, and we have no hesitancy in concluding from this record that defendants not only concealed their private interest in the transaction, but actually misrepresented it to many of the stock subscribers.

But, of course, such misrepresentation might not condemn the defendants in this action if they were under no duty to disclose their position, and they contend they were under no such duty. In their brief filed they stated the argument thus:

> "If the defendants Broom and Trent owned the option and rights secured by such option, prior to their becoming promoters of the plaintiff company, they were not bound to disclose their profits to the company."

In the special count of plaintiff's declaration it predicates its case for recovery upon a breach of that duty which the defendants as promoters owed to the plaintiff corporation. But, quoting from Fletcher, Cyclopedia of Corporations, Vol. 1, page 290, defendants' counsel say:

> "A distinction between cases where the property sold to the corporation was owned at the time the promotion of the corporation was undertaken, and cases where it was acquired subsequently thereto has been made in a

Pennsylvania decision which has been frequently quoted
by foreign courts. In the course of this decision it was
said: 'There are two principles applicable to all partner-
ships or associations for a common purpose of trade or
business, which appear to be well settled on reason and
authority. The first is that any man or number of men,
who are the owners of any kind of property, real or
personal, may form a partnership or association with
others, and sell that property to the association at any
price which may be agreed upon between them, no matter
what it may have originally cost, provided there be no
fraudulent misrepresentation made by the vendors to
their associates. They are not bound to disclose the
profits which they may realize by the transaction. They
were in no sense agents or trustees in the original pur-
chase, and it follows that there is no confidential rela-
tion between the parties which affects them with any
trust. It is like any other case of vendor and vendee.
They deal at arm's length. Their partners are in no
better position than strangers. They must exercise their
own judgment as to the value of what they buy. * * * *
The second principle is, that where persons form such
an association, or begin or start the project of one, from
that time they do stand in a confidential relation to
each other, and to all others who may subsequently be-
come members or subscribers, and it is not competent
for any of them to purchase property for the purposes
of such a company, and then sell it at an advance with-
out a full disclosure of the facts. They must account to
the company for the profit, because it is legitimately
theirs'.''

The above quotation is the defense in this case. Defendants
say that having already acquired an option on the property,
they were at liberty to negotiate a sale thereof to the plaintiff
subsequently organized at whatever price should be agreed
upon between them. We shall see whether this is a proper
argument.

Defendants profess to find much support in the case of
*Richardson, et al.* v. *Graham, et al.*, 45 W. Va. 134, 30 S. E.
92. There a group of stockholders sought to wind up a cor-
poration and to have its assets distributed equitably among
those entitled, alleging in their bill that Graham, the pro-
moter of the concern, had fraudulently made a secret profit
out of the enterprise, in almost exactly the same way as de-

fendants are alleged to have done here. The court there held
that having secured an option in his own right, Graham,
although he promoted the enterprise, could negotiate a sale of
his option to the company at an agreed price irrespective of
what it may have cost him. But that case involved a circum-
stance of which there is no semblance of a counterpart here,
and the court in its opinion pointed it out in no uncertain
manner. There appeared at the head of the subscription
list in that case the following statement:

> "The real estate contemplated to be operated by the
> oil company when formed is situated in Pleasants
> County, W. Va., containing ten acres, and generally
> described as part of the T. J. Cook estate at Vaucluse,
> for which I hold the option, and agree to sell all my
> rights therein to said company, for eight thousand five
> hundred dollars, when said company is organized."

The statement was signed "A. B. Graham", and as the
court said, "Every subscriber who took stock had an oppor-
tunity to read the above statement when he signed the sub-
scription list if he desired, and, if he signed without reading,
he had no one to blame but himself." Each subscriber knew
or had the opportunity of knowing that the corporation was
purchasing an option from Graham, the promoter. Fraud
and deception were specifically denied in the answer to he
bill of complaint, and the court was not convinced that there
was any.

Here there is absolutely nothing to show that the sub-
scribing stockholders had any idea that defendants had any
interest whatever. Their written statements, their prospectus,
and their verbal representations, if the half of them be true
as testified to by plaintiff's witnesses, are to the contrary. The
case relied upon is far from this case, and can afford no com-
fort to the defendants. But upon principle and authority
what merit is there in the proposition that defendants owed
no duty to plaintiff and its stockholders?

The general doctrine we find well stated in *Coal & Coke Co.*
v. *O'Neal*, 82 W. Va. 186, 95 S. E. 822, where in quoting
from *Camden Land Co.* v. *Lewis*, 101 Me. 78, we said:

> "It may be conceded, for it is well settled and true
> that promoters of a corporation stand in a fiduciary rela-
> 96 W. Va.

tion to the corporation, and to its subscribers for stock, and to those who it is expected will afterwards buy stock from the corporation. The promoters owe to them the utmost good faith. And if they undertake to sell their own property to the corporation they are bound to disclose the whole truth respecting it. If they fail to do this, or if they receive secret profits out of the transaction, either in cash or by way of allotments of stock, when there are other stockholders, or it is expected that there will be other holders of new and additional stock, undoubtedly the corporation may elect to avoid the purchase; or it may hold the promoters accountable for the secret profits, if in cash; or may require a return of the stock if unsold; or if sold, an accounting for the profits of its sale.''

But, defendants say the fiduciary relationship does not begin until the promotion of the company is begun, and defendants bought this option prior to that. To that we say that where bad faith and false representation characterize the promoter's conduct and he entirely conceals the fact that he has a personal interest in the matter, justice and the law are not controlled by the circumstance that a few days time may have elapsed between the acquisition of the option by the promoter and the securing of the first stock subscription. By defendants' own testimony those steps were but links in the same chain, and they owed as much good faith, so far as their representations were concerned, as if the order of the procedure had been reversed. To use the language of a text writer on this subject, Erich, Promoters, §91,

"A promoter's secret profit is unlawful because of the fiduciary relation in which he stands to the corporation. It is the fact of obtaining the secret profit, not the manner in which it is obtained that constitutes the wrong. No evasion, however ingenious or skillful, can make the secret profit lawful.''

And at §162, the same author contemplates a situation similar to that here:

"The promoter may be compelled to account for the difference between the price he paid for the property and the price he received from the corporation, though he owned the property before he entered upon the relation of promoter to the corporation, if he represents to

the corporation, or to the subscribers for its shares, that he acted for it when making the original purchase, or that he is selling the property to the corporation at its cost to him, or that he is deriving no personal profit from the transaction, or if his solicitations for subscriptions are in the form of an invitation to join in the purchase of the property. The promoter may likewise be compelled to account for the difference between the price paid by the company, and the cost of the property to him, if after making a contract for its purchase, he conceals his personal interest in the transaction, and leaves the company to believe that it is purchasing directly from his vendor."

Defendants here concealed the fact that they had an interest in the sale, they made active representations to the contrary, and under the principles we have considered have clearly violated a duty which they owed to the plaintiff corporation.

In addition to the foregoing general argument, defendants assign several particular errors. They object because the court refused to allow them to prove the actual value of the property. They desired to show that the plaintiff got value received. There is nothing in this argument. Plaintiff does not contend that it paid more than the property was worth. It only claims that defendants are to be held accountable for $8000.00 secret profits because of their breach of trust, and the evidence sought to be introduced was irrelevant on that question.

Defendants complain that they were not allowed to prove the circumstances leading up to the procurement of the option. What that could have to do with the case we are unable to discern. They proffered nothing in the record concerning what they wished to show in this connection. The option itself, the culmination of all negotiations, is in the record and defendant Broom tells just what their plan was. We find no error on this point.

It is contended that whatever representations may have been made to the individual stockholders, the wrong done, if any, could not inure to the benefit of the plaintiff company, and that therefore evidence of such was incompetent. At this late day it is unnecessary to enter upon a full discussion of

this proposition. Despite any right of recovery each stockholder of the plaintiff might have, it is well settled now that they in their corporate capacity may have redress for the wrong done them. The corporation may recover for all.

> "It is now well settled that the taking, by the promoters, of a secret profit, or the unlawful sale by them of their own property to the corporation, or the commission by the promoters of any other fraud upon the corporation, is an injury to the company in its corporate capacity and gives right to a cause of action which may be prosecuted by the corporation or its assignee." Erich, Promoters, §180; Alger, The Law of Promoters, §64, et seq.

In certain cases at the time the commissions or profits were acquired, all of the stockholders were the promoters and their associates, and later subsequent stockholders attempted to recover the alleged secret profits. Those and similar cases present situations with which we have no present concern, and the general rule quoted above clearly controls this case. We will not compel the plaintiff's stockholders to institute a multitude of actions to right the wrong done by defendants. The evidence complained of was clearly admissible.

Defendants say that the evidence adduced by plaintiff's witnesses contradicts the terms of the written contract or prospectus. This contention has no bearing whatever. Plaintiff is not attempting to alter or amend in the slightest degree any of the terms or obligations of its subscription agreement, of which the prospectus, as stated, was an introductory paragraph. This action is based not upon the terms of that agreement, but upon the fraudulent inducements which persuaded plaintiff to assume its obligations, quite a different proposition.

As to plaintiff's instruction No. 2, we have already shown the relation of these defendants to plaintiff and the duty owed because of such relations. The instruction stated that if the jury found that defendants sold the option to plaintiff at a price in excess of that paid for it, they were under a duty to disclose to plaintiff their interest and the whole truth of the transaction. Under the facts as presented, this was even more than defendants were entitled to. Although they

place much reliance on the fact that they procured the option prior to the creation of any trust relation, and then sold it to the company, in fact the record does not show it. They never sold any option to the plaintiff. Through a complete chain of fraudulent misrepresentation and concealments they engineered a sale from the Sydenstrickers to plaintiff, and if the circuit court was guilty of any serious error it was in failing to direct a recovery for the plaintiff for the full amount of the secret profits, $8000.00.

And in the above connection, a point which plaintiff has apparently not insisted upon, but one which we think would of itself have controlled this decision is that defendants were not alone promoters of the plaintiff at the time this transaction was consummated, but they were directors, and one of them was an executive officer of the company. In those capacities their fiduciary relationship to and with the corporation was of the strictest character. They could neither misrepresent nor conceal. Their primary duty was to work for the interest of the company. The deal which they negotiated should have been upon terms as favorable to the corporation as they could obtain. Directors can not faithfully serve two masters, and these defendants are not exceptions.

Under the above view of the case, two other errors assigned are of no material consequence. We affirm the judgment.

*Affirmed.*