# CHARLESTON.

W. L. SHANABARGER V. C. H. PHARES *et al.*
ANNA B. SHANABARGER V. C. H. PHARES *et al.*
and
TUCKER COUNTY BANK V. CHARLES H. PHARES *et al*

Submitted March 16, 1920.     Decided March 23, 1920.

1. BILLS AND NOTES—*Provision in Deed for Abatement of Purchase Money on Deficiency of Land Held not Notice to Purchaser of Notes.*

A stipulation in a deed reserving a vendor's lien to secure payment of negotiable purchase money notes, providing for an abatement from the purchase money evidenced by the notes, in the event of a deficiency in the land, is not constructive notice of such right of abatement, to a purchaser of the notes for value and before maturity. (p. 67).

2. SAME—*Buyer of Notes Without Actual Notice of Provision in Deed for Abatement of Deficiency in Land May Have Full Recovery.*

In the absence of proof of actual notice thereof at the time of his purchase or the legal equivalent thereof, he may recover the full amounts of the notes, notwithstanding the existence of a shortage in the land and right of abatement as between the parties to the conveyance. (p. 67).

3. VENDOR AND PURCHASER—*Purchaser's Right to Abatement May be Asserted in Suit to Sell Land Under Vendor's Lien to Pay Notes.*

But such right of abatement may be asserted in defense of a suit to subject the land on which the notes are so secured, to sale under the lien, for payment of the notes, the benefit of the lien being limited to the amount actually secured thereby, notwithstanding liability of the vendee to a purchaser of the notes before maturity, for value and without notice, for a larger amount. (p. 67).

4. BILLS AND NOTES—*Negotiability of Note Not Affected by Instrument Creating Vendor's Lien.*

Though a negotiable note and an instrument creating a lien on real estate to secure payment thereof are related documents usually executed at the same time and may be, and sometimes should be, construed together, for some purposes, they do not necessarily constitute one instrument in the legal sense of the terms, and they may be so interpreted as to permit each to perform its own function, agreeably to the intent of the parties. (p. 68).

5. SAME—*Purchaser's Note Securing Vendor's Lien is Commercial Paper, and Vendor's Lien is Ancillary Thereto.*

In such case, the note is commercial paper performing the functions, and having the qualities, accorded to it by the law merchant, and the lien to secure payment thereof is ancillary collateral and incidental to it and legally separable therefrom, for full and complete effectuation of the intent and purposes of the parties to the two instruments, as disclosed by their terms. (p. 68).

Appeal from Circuit Court, Randolph County.

Separate suits by W. L. Shanabarger and by Anna B. Shanabarger against C. H. Phares and others, pending which the Tucker County Bank brought a suit against the same defendants. Causes heard together, and from a decree partly in favor of Tucker County Bank, plaintiffs W. L. Shanabarger and Anna B. Shanabarger separately appeal.

*Reversed and remanded.*

*W. E. Baker* and *R. S. Irons,* for appellants.

*A. Jay Valentine,* for appellee.

POFFENBARGER, JUDGE:

The single question arising on this appeal pertains to the status of a vendor's lien securing payment of negotiable notes assigned before maturity, and providing for abatement or augmentation of the amounts of the notes, in the event of a deficiency in the land, in the one case, or an excess thereof in the other. The decree appealed from denies the vendee and his assigns the benefit of this provision, as against an endorsee of some of the notes, the court having held the land liable for the full amount represented by the notes, notwithstanding the existence of a very material shortage in the acreage of the land. Chas. H. Phares, his wife and his mother conveyed to Chas. B.

Campbell a tract of land, estimated to contain 334 acres, in con-sideration of $3,500.00 of which $200.00 was paid in cash and the balance deferred in seven installments, represented by six $500.00 notes and a $300.00 note secured by a vendor's lien. The deed stipulated, however, for an abatement as to the differ-ence between the actual area and 300 acres, if the former should be less than the latter, at the rate of $35.00 per acre, and for an addition to the last note, of compensation for the excess, if any, above 334 acres, at the same rate. There was no reference to this stipulation in the notes, but each of them bore this notation: "The same being a deferred installment of purchase money on land purchased of said Chas. H. Phares and others, and this note is secured by a vendor's lien on said land."

Campbell conveyed 100 acres of the tract to Anna B. Shana-barger, for and in consideration of $177.75 cash and the assump-tion of two of the $500.00 notes; and the balance of it to W. L. Shanabarger, for and in consideration of $248.25 in cash and the assumption of the other four $500.00 notes and the $300.00 note. In each of these deeds a vendor's lien was reserved to secure pay-ment of the assumed notes. The deed to W. L. Shanabarger stipulated that the parties thereto should have the benefit of the agreement contained in the Phares deed, respecting deficiency and excess in the area of land.

About three years after these conveyances to the Shanabargers, they discovered the existence of a material deficiency in the land, within the meaning of the contract. Within the year of that discovery, Anna B. Shanabarger, having paid off the notes as-sumed by her, and W. L. Shanabarger, having paid off two of the $500.00 notes assumed by him, instituted their respective suits against the grantors in the original deed; the former to ob-tain releases of the two liens on her part of the property, securing the same debts, and the latter to obtain an abatement from the amounts represented by the notes, extinguishing them in whole or in part, and compel cancellation of the notes and releases of the liens securing them. Charles H. Phares interposed de-murrers to the bills filed in these cases, which were overruled, and also his answers thereto. While said suits were pending and be-fore the shortage in the land had been adjudicated, Phares en-dorsed one of the $500.00 notes and the $300.00 note to S. C.

Simpson who endorsed them to the Tucker County Bank, before maturity; and the bank brought a third suit for enforcement of the vendor's lien on both portions of the original tract, denying any right in the owners to the provision in their favor, made by the stipulation for abatement in the event of a shortage, as against it, on the ground of its purchase of the notes for value and without notice of the right conferred by said provision of the deed. Defense was made to this bill and all three of the causes were heard together.

Upon the pleadings and proof, a shortage of 39.07 acres was found and adjudicated. One of the unpaid $500.00 notes, found to be still in the hands of Phares, was surrendered by him and cancelled. He and Campbell were required to execute releases of the liens reserved in their favor. Prior to the entry of the decree effecting these results, the bank had also released its lien, upon payment into court of the sum of $1,109.20, the aggregate of the principal and interest of the notes held by it, to stand as security for the debts, in lieu of the land. By the final decree, this sum was ordered to be paid to the bank.

This decree proceeds upon the theory of an enlargement of the security afforded by the vendor's lien, by the transfer of the negotiable notes secured by it, to a purchaser thereof for value and without notice. The abatement and compensation clause of the deed was not notice to the bank of the right it conferred. *Dollar Savings and Trust Co.* v. *Crawford and Ashby,* 69 W. Va. 109. Nor could the owners of the land have successfully set up any secret equity against the payee, in defense of a suit to enforce the lien, brought by a *bona fide* purchaser of the notes without notice thereof. *Carpenter* v. *Longan,* 16 Wall. (U. S.) 271; *Kenicott* v. *Supervisors, Id.* 452; *Sawyer* v. *Prickett,* 19 Wall (U. S.) 146; Jones, Mortgages, 7 Ed., sec. 834, citing the above and numerous state decisions. The doctrine is recognized and enforced in by far the greater number of jurisdictions. In Illinois, Minnesota, Louisiana, Ohio and Oregon, and possibly some other states, the rule is different, but the view of the question there taken is clearly a minority one. Jones, Mort., sec. 838, citing cases. The principle of the majority rule, however, has no application here because the right claimed against the bank is not a mere equity, either secret, latent or patent.

It is a contractual right conferred by the deed, and is governed by an entirely different principle.

The stipulation in the deed, for abatement or compensation dependent upon ascertainment of the area of the land, is a contract relating to the land as well as to the notes, and, unless it can be broadened or nullified by construction, it limits and defines the extent of the lien. It fixes the relative status of the land and the notes and the rights of the holder of the notes, respecting the land, whatever his right may be respecting the money called for by the notes and the parties liable thereon as makers and endorsers.     In states in which the majority rule above referred to has been adopted and is enforced, provisions of mortgages inconsistent with negotiable notes secured by them, have been allowed to control and limit the notes in the hands of *bona fide* purchasers without any notice other than the constructive notice afforded by the mortgages.  *Kennion* v. *Kelsey,* 10 Ia. 443; *Chick* v. *Willets,* 2 Kan. 384; *Dobbins* v. *Parker,* 46 Ia. 357; *Muzzy* v. *Knight,* 8 Kan. 456; *Meyer* v. *Graeber,* 19 Kan. 165; *Brownlee* v. *Arnold,* 60 Mo. 79; *Elliott* v. *Deason,* 64 Ga. 63; *Littlefield* v. *Hodge,* 6 Mich. 326; 8 C. J. 200.  Some of the decisions just cited no doubt proceeded upon the theory that the note and mortgage, having been contemporaneously executed, were to be construed together and considered as one instrument, and, where their provisions could not be reconciled, those of the mortgage had to be allowed to qualify the note. The decided trend of modern judicial authority and opinion is in a different direction.  Though the two papers are executed at the same time and closely related, they have different subjects and purposes and there is no rule of interpretation or construction, requiring them to be so treated as to affect either subject in a manner different from that intended by the parties or to defeat any of the purposes intended.  On the contrary, every rule of interpretation has for its object and purpose ascertainment and effectuation of the intention of the parties, whether the transaction evidenced by the writing has only one subject and one purpose or several. The debt evidenced by the note is the central or primary subject of the transaction between the parties.  Without either a note to prove its existence or a lien to secure it, certain legal qualities are inherent in it.  A negotiable note based upon

it and representing it has certain other or additional qualities under the law merchant. The mortgage or lien constituting the security is in itself a thing different from both the debt and the note and has an independent subject of its own, the property pledged by it. The giving of security for payment of a negotiable note by a mortgage, deed of trust, vendor's lien or deposit of collateral, does not necessarily involve any change in the qualities, terms or legal effect of the note, nor signify intention to make such change, any more than the placing of a prop under a structure of any kind involves a change of its qualities, use or purposes. The security is merely collateral, ancillary and incidental to the debt and note. Being separate or at least separable, the note may and does confer one right and the security another. The former is governed by the law merchant and the latter by the law of real property and equitable rules and principles, when it happens to be a mortgage, deed of trust or vendor's lien on land. Nowhere has it ever been held that an action at law to recover upon the note must be founded upon the lien as well as the note. Under the confused notion of a single obligation represented by the two papers, it has been sometimes held that the mortgage may be put in evidence or in some way relied upon to alter the terms or legal effect of the note, by construction. But the better opinion is that, even though the papers must or may be read and considered together, it does not follow that the provisions of the mortgage were intended as limitations or qualifications of the absolute promise of the note, or must be permitted to have such effect. *Thorpe* v. *Mindeman,* 123 Wis. 149; *Frost* v. *Fisher,* 13 Colo. App. 322; *Baker* v. *Sartori,* 66 Wash. 260; *Carroll Bank* v. *Taylor,* 67 Ia. 572; C. J. 202. Abstractly, these observations may be broader than the issues here involved, but they are clearly germane to our inquiries. We do not decide that, in no case, can a mortgage limit or qualify the note it secures.

The concrete question presented here is whether the note can extend the terms or legal effect of the mortgage and make it a security beyond, and in violation of, its terms and express limitations. There are cases in which it has been held, in actions at law upon negotiable notes, that a stipulation in a deed or mortgage, on which a right of abatement from the note may be founded, is not constructive notice to a purchaser of the note, of

the right so stipulated for. *Trust Co. v. Crawford et als.,* 69
W. Va., 110 and numerous authorities there cited. But that
proposition pertains to the right founded upon the note. Here
we have under consideration a resort to the security only, and
the subject of inquiry is the extent to which the land is bound
by the terms and provisions of the deed reserving the lien. Upon
the general principles of law and rules of interpretation above
indicated, we conclude that the holder of the notes involved can
have no greater right respecting the land, than the deed reserving
the lien confers by its terms properly interpreted, whatever its
right may be, respecting the maker and endorsers thereof. The
lien on the land is created and defined by the deed, not the notes.
In seeking the benefit of the lien, the purchaser of the notes can-
not deny notice of the provisions of the deed, the very instrument
under which it claims. The right of abatement so stipulated for
is not a mere equity arising out of transactions between the par-
ties and undisclosed by the deed. It is a right vested by a con-
tract embodied in the instrument creating the lien for enforce-
ment of which the holder of the notes brought its suit.

From this conclusion, it results that, in so far as the decree
complained of awarded the fund in court to the Tucker County
Bank and directed payment thereof to it, and gave a recovery
of an equal sum by the Shanabargers against Phares, it must
be reversed; and that the right of the Shanabargers to said
sum should be adjudged here, since the note surrendered and the
two held by the bank do not exceed the amount of the abatement
as determined by the deficiency. They are also entitled to their
costs in the court below against Phares and the bank, as well
as their costs in this court against the bank. But, as it does
not appear to which of them the fund in court belongs, nor in
what proportions they are entitled to it, if both are interested
in it, the cause will have to be remanded for execution of such
decree.

If the court below has jurisdiction of the makers and en-
dorsers of the two notes held by the bank, no reason is per-
ceived why it may not enter a personal decree in favor of the
bank against them. It came into court for enforcement of an
alleged equitable right, in good faith, and it apparently had
clear right to relief different from that sought by it, respect-

ing the notes involved. All of the makers and endorsers are named as parties in the bill and, if jurisdiction of their persons was obtained, there is no good reason why the bank should be required to bring a new action to recover a personal judgment on the notes. But it does not appear from the incomplete record we have here, whether such jurisdiction was obtained. If it was and the bank shall request the entry of such a decree in the court below, after the cause shall have been returned to that tribunal, it may be entered there.

*Reversed and remanded.*