# CHARLESTON.

MORGAN et al. v. FARMINGTON COAL & COKE CO.

Submitted June 16, 1924.   Decided September 9, 1924.

1. MINES AND MINERALS—*Owner of Undivided Interest of Coal and Mining Rights Not Necessary Party in Suit Solely to Enforce Vendor's Liens of Other Undivided Owner.*

   In a suit solely for the purpose of enforcing a vendor's lien reserved on an undivided interest in coal and mining rights in a boundary of land, the owner of the other undivided interest is not a necessary party, no relief being asked against him, and his rights being in no way questioned. (p. 90).

   (Mines and Minerals, 27 Cyc, p. 689 [1926 Anno]).

2. SAME—*Decree of Sale of All Coal, When Lien Sought Enforced on Undivided Interest Only, Held Erroneous.*

   In such suit it is error to decree a sale of all the coal on the assumption that defendant is the owner thereof, the lien sought to be enforced being reserved on an undivided interest only, and the bill praying for a sale of such undivided interest,

although a master commissioner has reported that defendant owns all the coal.   (p. 91).

(Mines and Minerals, 27 Cyc, p. 689 [1926 Anno]).

3.   COSTS—*Costs of Appeal in Correcting Prejudicial Error Awarded Appellant.*

Such error is not merely clerical, it is prejudicial to defendant, and upon correction by the appellate court on an appeal by defendant, costs of the appeal will be awarded appellant.   (p. 92).

(Costs, 15 C. J. § 618).

4.   BILLS AND NOTES—*Notes Stating They are Given for Purchase Money not Nonnegotiable, Because Clause in Deed Reserving Lien Provides Payment by Vendee of Prior Liens.*

Notes negotiable on their face under the Uniform Negotiable Instruments Statute, which state on their face that they ·are for installments of purchase money for coal and mining rights, conveyed to the maker by deed in which a vendor's lien is reserved for their payment, are not rendered nonnegotiable, because the deed reserving the lien provides that prior liens if not paid at maturity by the vendor may be paid by the vendee, and the notes credited by the amounts so paid.   The clause in the deed for possible credits is not constructive notice to a purchaser of the notes in due course. (p. 92).

(Bills and Notes, 8 C. J. § 327).

5.   VENDOR AND PURCHASER—*When Bona Fide Holder of Notes Invokes Remedy Afforded by Lien, he is Bound by Instrument Creating it.*

In a suit to enforce the vendor's lien by a purchaser of such notes in due course, the maker may reduce the amount of the recovery under the lien by whatever sums he has paid or is compelled to pay in discharge of such prior liens.   When the holder in due course invokes the remedy afforded by the lien, he is bound by the provisions of the instrument which creates the lien.   (p. 93).

(Vendor and Purchaser, 39 Cyc, p. 1854 [1926 Anno]).

6.   LIMITATION OF ACTIONS—VENDOR AND PURCHASER—*Vendor's Lien Available to Holder of Notes as Remedy for Collection of Debt; Amount of Notes Fixes Amount of Recovery on Vendor's Lien.*

A vendor's lien reserved for payment of a debt evidenced by negotiable notes automatically follows the transfer of the notes and is available to the holder of the notes in due course as a remedy for collection of the debt.   In a suit to enforce that remedy the amount of the notes fixes the amount of

recovery under the lien, unless the instrument creating the lien otherwise provides, and no secret equities which the maker of the notes could have set up against the payee can be set up against the lien, even though remedy on the notes has been barred by limitation.   (p. 94).

(Limitations of Actions, 25 Cyc, p. 1003, Vendor and Purchaser, 39 Cyc, pp. 1807, 1854 [1926 Anno]).

7.   Same.—*Foreclosure of Vendor's Lien Not Weakened by Fact That Remedy of Suit Barred by Limitations.* ·

The remedy, free from all equities between the original parties, is fixed as of the time the notes are purchased by the holder in due course, and the character and strength of the remedy is not changed or weakened because the other remedy (suit on the notes) is barred by limitation.   (p. 97).

(Limitations of Actions, 25 Cyc, p. 1003).

8.   Bills and Notes—*That One of Series of Notes Due and Unpaid is Not Notice of Infirmity in Others as to Bona Fide Purchaser; Mere Suspicion of Infirmity does not Preclude Purchaser From Status of Holder in Due Course; Circumstances Pointing to Infirmity Must be so Strong and Obvious as to Impute Bad Faith in Purchaser Remaining Passive; Rights of Holder Determined by Test of Honesty and Good Faith Rather Than Speculative Issues of Diligence and Negligence.*

The fact that one of a series of negotiable notes has become due and is not paid does not of itself constitute notice of infirmity in the notes to a purchaser in due course of those not due, especially where the maker has paid the interest on the note over due, and there are no facts or circumstances indicating that he has or would repudiate payment.   Mere suspicion of an infirmity in the note does not preclude a purchaser from attaining the status of a holder in due course. The facts and circumstances pointing to an infirmity must be so strong and obvious as to impute bad faith in the purchaser, if he remains passive and does not make prudent inquiry. The rights of the holder must be determined by the simple test of honesty and good faith, and not by speculative issues of diligence or negligence.   (p. 98).

(Bills and Notes, 8 C. J. §§ 710, 730).

9.   Vendor and Purchaser—*Decree Enforcing Vendor's Lien Does Not Merge Notes Which Have Been Transferred to Innocent Purchaser.*

A suit by the payee of negotiable notes to enforce a vendor's lien securing them ending in a decree for recovery against the maker for the amount of the notes does not merge the

notes into the decretal judgment, where they have been transferred to an innocent purchaser in due course before the decree is rendered, and the payee has parted with all right or interest therein, so far as the innocent purchaser in due course is concerned; and such decree will not preclude such purchaser from enforcing the notes or lien in any proper action. (p. 102).

(Vendor and Purchaser, 39 Cyc, p. 1854 [1926 Anno]).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Appeal from Circuit Court, Marion County.

Suit by Rufus E. Morgan and others against Farmington Coal & Coke Company and others. From a decree for plaintiffs, the named defendant appeals.

*Modified in part. Affirmed in part. Remanded.*

*Ernest R. Bell* and *M. M. Neely*, for appellant.

*Harry Shaw* and *Poffenbarger, Blue & Dayton*, for appellees.

LIVELY, JUDGE:

The object of this suit is to enforce a vendor's lien against an undivided interest in the Pittsburgh vein of coal sold to defendant Farmington Coal and Coke Company, a corporation, under certain lands situate on Plum Run and Mods Run in Marion County, including mining rights and privileges.

The boundary of land under which this undivided interest in the coal lies, is composed of five tracts aggregating 967.8 acres. By deed of January 3, 1910, Albert L. Lehman, now deceased, and Homer J. Price, conveyed to Farmington Coal and Coke Company (hereinafter called the Coal Company) the undivided two-thirds interest in the Pittsburgh seam of coal in two of the tracts aggregating 397.8 acres and an undivided 125-570 of the said coal underlying the three other tracts aggregating 570 acres, for the sum of $102,967.68, of which $25,101.92 was paid in cash and the balance on time, represented by six interest bearing notes, three of which were executed and delivered to Lehman, each for $13,336.33, payable at the Peoples National Bank of Waynesburg, Pennsylvania, the due dates thereof being as follows: First note on Sept. 28, 1910; the Second, Sept. 28, 1911; and the

Third, Sept. 28, 1912, all bearing interest from September 28, 1909. The other three notes were executed and delivered to Price, each for the sum of $12,405.58, and due and payable at the same times and place as set out in the Lehman notes. The deed conveyed the usual mining rights and privileges for mining and removing the coal; and a vendor's lien was expressly retained in the deed to secure the payment of the unpaid purchase money as represented by the notes above described. The first note payable to Lehman and the first note to Price, both due Sept. 28, 1910, were paid. The interest on the other notes was also paid up to September 28, 1910. The two second notes, one to Lehman and the other to Price, not having been paid at maturity, they instituted a chancery suit at August Rules, 1912, in the Intermediate Court of Marion County, against the Coal Company, to enforce the vendor's lien, the bill averring that the remaining four purchase money notes unpaid were owned and held by plaintiffs Lehman and Price. The undivided interest in the coal deeded to the Coal Company had previously been conveyed to Lehman and Price by various persons who had reserved vendors liens in their deeds; and one of the tracts conveyed to the Coal Company by Lehman and Price, was encumbered by a prior deed of trust. Provision was made in the deed to the Coal Company to the effect that if Lehman and Price did not pay these prior vendor's liens and discharge the deed of trust after they became due, then the Coal Company should have the right to apply so much of the deferred purchase money to the discharge of these prior liens, and it was stipulated that Lehman and Price should give credit on the deferred purchase money notes for the amount so paid in discharge of the prior liens. These lienors and the trustee in the deed of trust and his cestui qui trust were made parties defendant to the suit to enforce the vendor's lien in the Intermediate Court. A decree was entered on November 27, 1912 which fixed the amount of Lehman's lien at $30,126.76 and Price's lien at $28,024.20; and provision made by which the Coal Company should pay off the various prior liens and credit the amounts paid on the Lehman and Price liens. No further steps were taken to enforce that decree, and the Coal Company made various payments to

Lehman and Price on their liens so decreed, amounting to $46,600.00 as of the 7th day of December, 1915. However, it appears that the four notes representing the balance of the purchase money had been negotiated by Lehman and Price as follows: The $13,336.33 note due September 28, 1911, payable to Lehman, was on June 15, 1910, endorsed and assigned by Lehman to plaintiff Festus Parrish as collateral security for the payment of a debt of $10,000.00 owing by Lehman to Parrish; the other Lehman note for the same amount ($13,336.33), due September 28, 1912, had been endorsed and assigned by Lehman to plaintiff Rufus E. Morgan; the Price note of $12,405.58, due September 28, 1911, was on January 17, 1912 (after the maturity thereof), endorsed and assigned to plaintiff Peoples National Bank of Fairmont as collateral security for a debt which Price owed to that bank; the other Price note for $12,405.50, due September 28, 1912, had been endorsed and assigned by Price to plaintiff Peoples National Bank of Fairmont, on May 12, 1912, as collateral security for the same debt which the other Price note was assigned to secure. It will be noted that the interest on these four notes so assigned had been paid by the Coal Company up to September 28, 1910 and the amount thereof credited upon each note.

It appears that the Coal Company knew nothing of the assignment of the purchase money notes until after it had paid the $46,600.00 to Lehman and Price; and upon a refusal of the Coal Company to pay these notes to the holders, the plaintiffs, Rufus E. Morgan, Festus Parish, and the Peoples National Bank, instituted this suit in the Circuit Court of Marion County to October Rules, 1920, for the purpose of enforcing the vendor's lien reserved in the deed of January 3, 1910, given to secure the balance of the purchase money represented by the notes held by them, making the prior vendor's lien holders and the trust lien holder parties.

The Coal Company asserts that the lien for purchase money, the amount of which is evidenced by these notes in the hands of the plaintiffs should be credited with the $46,600.00 paid by it to Lehman and Price. Plaintiffs assert that they are holders of these notes in due course and are entitled to full payment thereof, and that there are not and cannot be any

off-sets or equities against the notes or the lien securing them. Who is to lose the $46,600.00 paid by the Coal Company to Lehman and Price, if per chance it can not be recovered from Price or Lehman's estate? This is the meat of the controversy.

A general demurrer to the bill was interposed and overruled, and upon the coming in of the answer the cause was referred to a master commissioner who took evidence and made a report. Exceptions to the report were filed by defendant, which were sustained in part and overruled in part. The decree denies the contentions of defendant; finds that plaintiffs are holders for value and in due course of the notes, with the exception of the one which was negotiated after its due date; ascertains the amounts due to the holders on the notes and the sums due on the prior liens; refuses to subject the amounts decreed to plaintiffs to a credit of the amounts decreed to the prior lienors, namely A. O. Thomas, $1,582.06, and F. J. Hugus, $3,242.77; and directs a sale of all of the Pittsburgh seam of coal underlying the entire tract of 967.8 acres. The sum decreed Festus Parrish was $15,-270.42, the sum decreed Rufus E. Morgan, $23,358.09; and the sum decreed the Peoples National Bank of Fairmont, $20,507.89.

When the Coal Company executed these notes negotiable in form it was bound to know that they might pass into the hands of innocent purchasers in due course, and thus be impressed with peculiar rights in the hands of purchasers under the law merchant. In making payment to discharge the obligation evidenced by these notes it was clearly the duty of the Coal Company to see that the notes were in the hands of the person to whom it paid the money and proper credit made thereon, especially on those notes not due at the time of partial payment. The Coal Company neglected to observe this precaution or duty when it made payments aggregating $46,600.00 to Lehman and Price subsequent to the decree in their favor entered November 27, 1912. Evidently relying upon the decree based on the allegation in the bill in that proceeding by Lehman and Price that they then held and owned the notes, all of which were then past due, the $46,600.00 was paid in good faith. Unfortunately the notes had been

negotiated, as above set out, before the decree was entered. The notes, excluding the one assigned after its maturity, are all held by plaintiffs in due course for value. The court has so held under the evidence. Apparently both parties have acted innocently and in good faith. It may be said that the failure of the Coal Company to see that its payments aggregating $46,600.00 were made to the proper person and the amounts credited on the notes, has brought about this difficult situation. Who is to suffer? What are the equities? The general rule of equity is, "Whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it."

The Coal Company admits that it owes a balance of the purchase money, even after the $46,600.00 is given and after all other equities are set off against the notes, and that when such balance is ascertained it is ready, willing, and able to pay the same.

The principal point of controversy is whether the $46,-600.00 payment should be credited on the lien. The alleged errors in the decree are as follows:

The first assignment is that the decree was pronounced in the absence of necessary parties defendant. If the decree has been pronounced without necessary parties before the court, then the appellate court will enter upon no inquiry into the merits of the cause, but will reverse it and remand it for the purpose of bringing in the necessary parties. *Miller* v. *Morrison*, 47 W. Va. 664, 35 S. E. 905; *Beckwith* v. *Laing*, 66 W. Va. 246, 66 S. E. 354. The Coal Company says that the owner of the other undivided interest in the coal under the entire tract is a necessary party We do not concur in this contention. It is not perceived in what way he would be interested or his rights affected by a fruition of the purposes of the suit. He would have no interest in a sale of the Lehman and Price undivided interest if made by a voluntary deed. It would not affect his right or interest; and if a forced sale be made through the court he would stand on no higher plane. It is not perceived how his rights would be affected or prejudiced by this proceeding. The general rule as to parties, often repeated, is that all persons who are ma-

terially interested in the subject matter involved in the suit
and are to be affected by the proceedings and result should
be made parties, so that full justice may be done in one suit.
*Poteet* v. *Imboden*, 73 W. Va. 570, 80 S. E. 958. Pomeroy
in his Equity Jurisprudence, Sec. 114, says, ''Its fundamen-
tal principle concerning parties is, that all persons in whose
favor or against whom there might be a recovery, however
partial, and also all persons who are so interested, although
indirectly, in the subject-matter and the relief granted, that
their rights or duties might be affected by the decree, al-
though no substantial recovery can be obtained either for or
against them, shall be made parties to the suit.'' It is true
the decree adjudicates that the Coal Company is the owner of
all of the coal in the boundary and directs it to be sold in
satisfaction of the vendor's lien reserved only on an un-
divided interest therein. If the decree be carried out and
the entire coal sold and deeded to a purchaser, the rights of
the holder of the other undivided interest would be affected,
if perchance there be another holder. The decree would be
void as to him. But it cannot be presumed that the court
might, in a proceeding to enforce a lien on a specific interest
in the land, go beyond the prayer of the bill and include the
other undivided interest over which it had no jurisdiction.
It would not be necessary to make the holder of the other
undivided interest a party on the assumption that the court
might decree a sale of his interest. The decree is clearly
wrong in that it decrees the sale of all the coal, whereas there
is nothing in the pleadings which would warrant such sale.
Even if the Coal Company owns the entire tract of coal, as
reported by the commissioner, it must be remembered that
this is not a creditor's suit but a suit to enforce a lien only
on a specific interest in the coal. A decree must have for its
basis a proper pleading else it is no decree. *Martin* v. *Kester*,
46 W. Va. 438, 33 S. E. 238; *Turner* v. *Stewart*, 51 W. Va.
493, 41 S. E. 924; *Waldron* v. *Harvey*, 54 W. Va. 608, 46 S.
E. 603. The suit partakes of the nature of a suit for specific
performance. *Miller* v. *Morrison*, 47 W. Va. 664, 667, 35 S.
E. 905. Plaintiffs argue that the Coal Company cannot com-
plain, because the decree in that regard is not prejudicial to
it, but is beneficial in that it directs sale of another's property

to pay its debt. Presuming that the decree does direct the sale of an interest held by a person not a party and in no way bound to pay the debt, it is apparent that a train of confusion and evil would result from the execution of the decree. A purchaser would not be bound by his bid if he discovered the defect in the decree before confirmation and actual payment of the purchase money. The sale would be void. A purchaser would not know how to bid in order to obtain title to the property of the defendant. Delay, litigation, and burdensome costs would logically follow. It cannot be said that defendant Coal Company is not prejudiced by that part of the decree which directs a sale of all of the coal whether it be the entire owner, or whether another owns an undivided interest. Plaintiffs say the decree is proper because the master commissioner reported that the Coal Company owned all of the coal and there was no exception to the report, hence the evidence cannot be resorted to to ascertain the true fact, citing *McCarty* v. *Chalfant*, 14 W. Va. 531, and cases of like import. The pleadings do not warrant such a finding whatever may be the evidence. It must be kept in mind that the bill is for the purpose of enforcing a vendor's lien on a specific interest in the coal. It is not a general creditors bill to enforce liens upon defendant's entire property, in which it must be ascertained that the rents, issues and profits will not pay the liens within five years, before sale can be made. If this be the only error in the decree it will not be necessary to reverse and remand, because sufficient data clearly appears in the record by which a proper decree can be entered under Sec. 3, Chap. 129 of the Code. However, the error is one of law and not such as could have been corrected by motion under Section 5, Chap. 134 of the Code. The error is judicial and not clerical. An appeal was necessary to correct it; and the appellant should not be required to pay the costs of the appeal. The error cannot be said to have been inadvertently made. Appellees are here *insisting* that it is not an error and seek to justify the decree on the ground that it is warranted by the commissioner's report. On this error the appellant is the substantially prevailing party.

The third assignment of error is that the notes for balance of purchase money are non-negotiable because of the stipula-

tion in the deed which provides for payment of prior liens by the grantee, if not paid by grantors when they become due, and for the crediting of the amount so paid upon the purchase money notes by the grantors. It is claimed that this right to reduce the notes by crediting thereon of indefinite sums which might be paid in discharge of prior liens renders the amount of the notes uncertain. All of the requirements of negotiable paper appear on the face of the notes. They are in writing signed by the maker, contain an unconditional promise to pay a sum certain in money, at a fixed time, and are payable to the order of a person named. Sec. 1, Chap. 98-A of the Code. The notation on the notes to the effect that they represent installments of purchase money for coal and mining rights and are secured by vendor's lien does not destroy their negotiability. The notes and the instrument securing payment are two different papers not to be considered as one, although executed at the same time, and are for different purposes. The clause in the deed for possible credits on the notes is not constructive notice to a purchaser of the notes, negotiable in terms. *Shanabarger* v. *Phares*, 86 W. Va. 67, 103 S. E. 349; *Trust Co.* v. *Crawford & Ashby*, 69 W. Va. 109, 70 S. E. 1089. A purchaser would not be required to inspect the deed either to see if the consideration mentioned was true, or for assurance that the notes were secured by a vendor's lien. The maker of a note negotiable on its face, has assured the purchaser thereof in due course, that there are no credits or sets-off against it. He pledges himself to payment of the amount stated. In these notes the maker says it will pay the amount stated at maturity, "without defalcation." That there is an additional security for payment does not affect their negotiability, except possibly to make negotiation easier. An unqualified promise to pay is unconditional although coupled with a statement of the transaction which gives rise to the instrument, Sec. 3, Chap. 98A of the Code. The notes are negotiable notwithstanding the clause for possible credits in the instrument securing their payment.

But the suit is not to obtain judgment on the notes, but is for the purpose of enforcing the lien to secure their payment by decreeing a sale of the coal and mining rights; and the

Coal Company by its 4th and 6th assignments of error contends, in substance, that in such suit all of the equities existing between it and Lehman and Price, either before or after the transfer of the notes (it having had no notice of the assignment of the notes), should be considered and set off against the lien; and having paid to Lehman and Price $46,-600.00 on their decree for balance of purchase money pronounced by the Intermediate Court, before it had notice of the assignment of the notes to plaintiffs, it was error to refuse to credit this sum against the purchase money lien sought to be enforced; and as bearing on this crucial point in the controversy, the Coal Company asserts that the notes themselves are Pennsylvania contracts, made in and to be performed in that State, governed by the laws of that State in their enforcement, and are barred by the statute of limitations of Pennsylvania, which it pleaded, and which bars notes of this character in six years from their due date. It is contended that the lien is not negotiable, and as the suit is on the lien only, all equities which could be asserted in resistance of non-negotiable paper can be set up against the lien. To sustain this statement *Shanabarger* v. *Phares,* 86 W. Va. 64, 103 S. E. 349; *Dearman* v. *Trimmier,* 26 S. C. 506, 2 S. E. 501; and cases from Illinois, Minn., La., Ohio, Cal., Pa., Oklahoma., and Ky. are cited; also Wiltsie on Mortgages, Sec. 417 and Pomeroy Eq. Juris. Sec. 704.

The theory upon which these decisions, relied upon by the Coal Company, are based, is that although the notes secured by the lien are negotiable the lien itself is only assignable in equity, and the assignee being forced to go into equity to enforce his rights is compelled to do equity toward the mortgagor or the owner of the property on which the lien attaches, and to allow him all the rights of defense he had against the mortgagor or lien holder. The theory is that the mortgage or vendor's lien is not assignable, and the assignee of a negotiable note suing on a lien to secure that note must allow all equities and defenses between the original parties as if the suit was upon a non-negotiable instrument. This is the rule established by the courts of Ill., Minn., La., Ohio, and Oregon, and is designated by the text writers as the minority rule. 27 Cyc. page 1324, subject "Mortgages securing nego-

tiable papers''; Volume 2 Pomeroy, Sec. 704 and Volume 3 idem, Sec. 1210 and note 4 on page 2899, (The author of this note criticizes the majority rule and advances the opinion that the doctrine followed by the Illinois courts is the true one); 19 R. C. L. Sec. 127; Volume 2 Jones on Mortgages, Sec. 838.   According to the majority rule established and followed by the Supreme Court of the United States and eighteen or twenty of the States, the mortgage or lien which secures a negotiable note follows the note taking the same character of the note and the assignee, taking the note in good faith before maturity, takes the mortgage or lien free from any equities existing between the original parties.   The courts which so hold are listed in a note to 27 Cyc. page 1325, and a full list of the cases so holding will be found in a note to Sec. 834 in Volume 2 of Jones on Mortgages.   The cases relied upon by both the appellant and the appellees are noted in these text books.   In *Carpenter* v. *Longan*, 16 Wall. (U. S.) 271, 21 L. Ed. 313, Justice Swayne says, ''The transfer of the note carried with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equity.   When the amount due on the note is ascertained in the foreclosure proceeding, equity recognizes it as conclusive, and decrees accordingly.   Whether the title of the assignee is legal or equitable is immaterial.   The result follows irrespective of that question.   The process is only a mode of enforcing a lien.''

''All the authorities agree that the debt is the principal thing and the mortgage an accessory.   Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both.''

The criticism of this majority rule is that the courts have extended to liens and mortgages the peculiar law which applies to negotiable notes and arose out of the customs of merchants, and the courts have proceeded solely with a view to protect the interest of merchants, and to secure the safety and freedom of merchantile and commercial dealings; and have lost sight of the equitable principle which pertains to liens and mortgages which secure the payments of the debts. See note 4 to Sec. 1210, Volume 3 Pom. Eq. Juris., page 2899.

It may be that the law merchant originally grew out of the customs of merchants in the conduct of their business, but this law has now been incorporated in our negotiable instruments law which governs the remedies on every note made negotiable by any person whether merchant, coal operator, or dealer in land, which is put upon the market with the characteristics of negotiability. We are sought here to invoke the minority rule as represented by the Illinois cases and others cited. We think we are committed to the majority rule by our case of *Shanabarger* v. *Phares,* 86 W. Va. 64, 103 S. E. 349, which is cited and relied upon by both parties. The court in that opinion recognized the rule that where the negotiable paper and the vendor's lien to secure its payment were executed at the same time they were separable each conferring separate rights upon the holder, and whatever equities existed between the holder of the negotiable paper and the vendor if expressly set out in the paper reserving the lien was necessarily involved in a suit to enforce the lien, but would not be considered or allowed in a suit on the negotiable paper in the hands of an innocent purchaser in due course. The lien, the tie which bound the property to the debt, was impressed with the contract of the parties appearing in the paper itself, and it was held that when that lien was resorted to for enforcement, it was governed by the terms under which the lien was created; hence a provision in the deed reserving the vendor's lien, for abatement in the purchase price if there was a shortage of the acreage conveyed was allowed against the lien, there having been such shortage. But the opinion expressly holds that secret equities held by the maker of the negotiable paper against the original payee could not be successfully asserted against the lien when sought to be enforced by the assignee of the paper acquired by him in due course; and cites with approval the doctrine followed in *Carpenter* v. *Longan,* 16 Wall. (U. S.) 271, from which the above quotation from Justice Swayne's opinion is taken, and *Kenicott* v. *Supervisors,* 16 Wall. (U. S.) 452; and *Sawyer* v. *Pickett,* 19 Wall. (U. S.) 146.

There can be no question under our decisions that the assignment of negotiable paper impliedly affects a corresponding assignment of the lien. *Tingle* v. *Fisher,* 20 W. Va. 497;

*Thomas* v. *Linn,* 40 W. Va. 122, 20 S. E. 878. It is the universal rule. It is also well settled that the right to enforce the lien thus assigned exists after the remedy at law. for the collection of the debt has been lost by limitation. *Criss* v. *Criss,* 28 W. Va. 388; *Hull* v. *Hull,* 35 W. Va. 155, 13 S. E. 49; *Hanna* v. *Wilson,* 3 Grattan 242. But it is insisted by appellant that the notes herein involved are. Pennsylvania contracts to be paid in that State, and that. they are barred by the statute of limitations of that State, which it expressly pleaded in its answer; therefore, while. the remedy for enforcement of the lien still exists, the remedy on the notes is lost, and all equities which exist between it and Lehman and Price may be asserted against the lien, because the notes have lost their validity and force by limitation. They cite and rely upon the case of *Dearman* v. *Trimmier,* 26 S. C. 506, 2 S. E. 501. It will be observed that this point was not involved in the *Shanabarger* case. The notes which the vendor's lien secured in that case were still alive and could have been enforced to the amount therein stated, but the suit by the Bank was to enforce the lien reserved and not to enforce collection of the notes. The South Carolina case adheres to the majority rule doctrine above referred to, but holds that where the note has been barred by the statute of limitations and has thus lost its legal vitality, and all right of action upon it is gone, the general rule does not apply, and the lien to secure it is changed in character so as to admit equities which existed between the maker and the original payee. We can not see that the remedy on the lien would be changed in character because the note itself could not be enforced. The loss of the remedy on the note would not change the character of the debt or the lien which secured it. The theory by which the holder of the note after it is barred· by limitation can proceed to enforce the lien securing it, is that the creditor has two remedies and we can not see that the loss of one remedy would change the other and make it less effective. The *Dearman* case recognizes the rule that if the notes were alive no equities could be set up against a suit to enforce the lien, and we fail to perceive any good reason why the same rule would not apply where the remedy was lost on the notes. The argument is that the note having

been barred is no longer commercial paper and the commercial rule for protecting it in the assignment of the lien to secure it can no longer be invoked. If that were true the same rule would equally apply after the note became due when it would cease to be commercial paper in the strict sense of the term. As pointed out by counsel for appellees, the right of the assignee of commercial paper in the lien securing it, is fixed at the time of the assignment, and after the note became due in the hands of an assignee in due course he could by assigning the note, although it had lost its negotiable character, transfer the lien to secure it with all its original strength. No equities between the maker and the original payee could be set off against the lien if perchance the note had been assigned by a holder in due course after it became due. An equity once lost is permanently eliminated. We cannot follow the South Carolina case and hold that the remedy for the enforcement of the lien, even after the notes have been barred by limitation, is changed or impaired, and the equities which could not have been off-set against the lien while the notes were alive are brought to life and vigor after the notes are barred. The *Dearman* case was decided in 1886, and Judge McIver, who rendered the opinion, said that he had been unable to find a single case where the question had been considered under the circumstances of that case. We have been unable to find that the holding in this case has been followed by any other court. On the contrary, it is criticized in Volume 2, Jones on Mortgages in a note to Section 836, as follows: "In regard to this decision, it is pertinent to ask whether the validity of the assignment is not to be determined as of the time when the assignment is made. If the assignee then acquired a title to the mortgage free from all equities existing between the parties to the mortgage, why should the statute of limitations, by taking away the remedy upon the note, change the character of the title by which he holds the mortgage, when the well-settled rule is that the loss of the right of action on the note does not deprive the holder of the mortgage of his right to enforce that?" The effect of the decision in *Cheney* v. *Woodruff*, 20 Neb. 124, is contrary to the *Dearman* case.

It will not be necessary to pass on the fifth assignment of

error, which is to the effect that the notes are barred by the Pennsylvania Statute of Limitations, which assignment is vigorously contested by appellees to the effect that the notes are not barred.

The Coal Company insists that the Peoples National Bank is not a holder in due course of the $12,405.58 note due September 28, 1912, assigned to it by Price on May 1, 1912, because it had previously taken from Price another $12,405.58 note which became due on September 28, 1911, and which was received by the Bank as collateral on January 7, 1912. Tersely stated, the proposition is that the Bank, having notice that the prior note had not been paid, (the note due September 28, 1911), it was put upon inquiry as to the other note which it purchased before maturity as to any defect therein and that the acceptance of the note not due under such circumstances places the Bank in the status of a purchaser of non-negotiable paper. *McGuigan* v. *Abele* (Mich.), 44 N. W. 393, is relied upon to support this proposition. That case involved a controversy between a mortgagor and an assignee of the mortgage which secured payment of several notes, one of which was over due at the time of the assignment of the mortgage, and the court held that the assignee took the mortgage subject to any equities which existed between the mortgagor and the mortgagee as to the note not due. The instant case involves an assignment of notes secured by a vendor's lien which incidentally follows the notes secured. There is authority, however, for the proposition that one who purchases a series of notes arising out of one transaction and with one consideration, some of which are past due and unpaid, does not attain the status of a purchaser in due course of the notes which were not due. *Harrington* v. *Claflin,* 91 Tex. 294. It will be observed in the *Harrington* case that in each of the notes in controversy there was a provision that failure to pay it or any installment of interest thereon when due should, at the instance of the holder of the notes mature all of them. Whether this provision had any influence upon the holding of the court is difficult to determine from reading the opinion. Many cases hold that where there is such a provision in the notes the purchaser of notes not due, one of said notes having become due

and unpaid, is not a purchaser in due course under the law merchant. *Stoy* v. *Bledsoe,* 31 Ind. App. 643, 68 N. E. 907; *Lybrand* v. *Fuller,* 30 Tex. App. 116, 69 S. W. 1005. In *Boss* v. *Hewett,* 15 Wis. 260, the court held that the purchaser of negotiable notes before maturity can not be held chargeable with notice of any defect in their consideration from the mere fact that one note secured by the same mortgage was over due and unpaid. However, the notes in that case did not show upon their face that they were a series of notes with one consideration arising out of one transaction, and the court said that when that question was presented it would be decided. In *Spencer* v. *Alki,* 53 Wash. 77, the court held that the fact that four mortgage notes were due at the time of the assignment of the mortgage and notes would not constitute notice of an infirmity in three unmatured notes in the hands of innocent purchasers in good faith, especially where there had been payment of interest and part payment of principal of the notes past due. See *Towner* v. *McClelland,* 110 Ill. 542. It will be noted that there is a conflict in the decisions on this particular point. A holder in due course under Section 52 of our negotiable instruments law is one who has taken the instrument under the following conditions: ''(1)    That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument, or defect in the title of the person negotiating it.'' Manifestly the transfer of the notes to the Bank fulfils the first three conditions above set out in the negotiable instruments statute; and it remains to be considered whether at the time this undue note was purchased by the Bank it had notice of an infirmity in the instrument or a defect in the title of the person negotiating it. Does the fact that the Bank knew that one of the notes had matured and was not paid give it notice of an infirmity in the note not due? It is well settled that to constitute notice of an infirmity in the instrument the person to whom it was negotiated must have had actual knowledge of the infirmity or knowledge of such facts

that his action in taking the instrument amounted to bad
faith. This was the rule at common law and it is not changed
by our statute. Crawford's Annotated Negotiable Instru-
ments Law, Sec. 56; 8 C. J. 501 and cases cited. The mere
suspicion of an infirmity does not preclude a transferee from
occupying the position of a holder in due course, unless the
circumstances and conditions are so cogent and obvious as
to amount to bad faith: The observation made in *Noyes.* v.
*Landon,* 59 Vermont 569, 576, is pertinent; "There has been
great diversity of opinion among courts and law writers in
defining who are bona fide holders of negotiable paper, and
as to the protection that they are entitled to; but since such
paper has become so important a factor in the transaction
of business, the disposition of courts generally has been to
encourage its circulation and use, and to afford all reason-
able protection to those who have obtained it in good faith."
Daniel on Negotiable Instruments says in Sec. 787: "Where
more than one note is executed upon the same consideration,
they are not all to be regarded as dishonored when one is due
and unpaid," citing *Patterson* v. *Wright,* 64 Wis. 291. The
notes assigned to the Peoples National Bank show on their
face that they arose out of one transaction and were for one
consideration; but it appeared on both of the notes that the
maker had paid the first installment of interest, indicating
that there was no failure of consideration and that the maker
intended to pay the notes and recognized the obligation. The
fact that one note was not paid would only indicate under
these circumstances inability of the maker to pay and would
not put the Bank upon the necessity of inquiry of possible
defenses. We have seen that actual notice or a state of facts
compelling investigation is necessary, and a mere suspicion
of infirmity or defect would not change its status as a holder
in due course. What would any prudent business man have
done under the circumstances, knowing the notes were se-
cured by a vendor's lien upon a valuable tract of coal? We
do not think this point well taken and conclude that the
Bank was a holder in due course of the note purchased be-
fore maturity.

It is argued that the notes sued on were merged in the de-
cree of the Intermediate Court rendered on November 27,

1912, and that the court erred in holding that plaintiffs were not affected by the decree. No authority is cited except those which have been considered to the effect that the notes were not negotiable. Plaintiffs were not parties to the suit in the Intermediate Court and had no notice, actual or constructive, of its pendency and purpose. The notes were all assigned to them in due course, except the one assigned after its due date, prior to the decree, and Lehman and Price had no right in them at the time the Intermediate Court decree was rendered. They could not have been merged in that decree so far as plaintiffs were concerned. As to Lehman and Price the point would have been well taken. The subsequent payments to Lehman and Price on this decree, amounting to $46,600.00 were made under the assumption that they still held the notes, or that they were filed as a part of the record in the Intermediate Court suit. This unfortunate mistake is the cause of this litigation. *Armstrong* v. *Painter,* 75 W. Va. 393.

The remaining assignment of error is that the decree does not give the Coal Company the right to reduce the amount of the notes as ascertained by the decree, by the payment of prior liens to Adina O. Thomas $1,582.06 and to F. J. Hugus $3,242.77, but requires the Coal Company to pay these liens in addition to the purchase price of $102,967.68. Appellees agree that this should be done, but argue that the decree does in effect do so. That the prior liens of Thomas and Hugus should be allowed to reduce the amount of the notes in a suit to enforce the vendor's lien, but not in a suit on the notes held by a holder in due course, is settled by *Shanabarger* v. *Phares,* 86 W. Va. 64, 103 S. E. 349. Where the instrument creating the lien on its face limits the amount secured that amount only can be recovered in a suit on the lien. When the holder seeks to invoke his remedy by enforcing the lien, he is bound by the instrument creating the lien. It is argued by appellees that because there was an excess on the note held by Parrish as collateral over and above the amount of the debt secured by the note, of about $8,333.00, and an excess in the note held by the Bank as collateral over and above the amount of the debt secured by the collateral, of about $2,-000.00, and because the Bank lost the $12,405.58 note by

reason of having purchased it after its due date, it would be inequitable to allow the Coal Company to further reduce the recoveries in their favor by paying out of the notes held by them as holders in due course the Thomas and Hugus prior liens. On the other hand it must be remembered that the Coal Company has paid $46,600.00 for which it receives no benefit unless it can be used against the stated excess of about $10,000.00 which would revert to Lehman and Price, and against the notes assigned after maturity. To hold that the Coal Company was not entitled to do so, would make it pay the full purchase price of the land and discharge the prior liens also. In a suit on the notes held in due course plaintiffs would have been entitled to judgment without respect to the prior liens, and if the full amount of the judgment was not satisfied by the sale of the property resort could be had to other property of defendant. It was error to disallow the amounts of the Thomas and Hugus prior liens, when paid by defendant Coal Company, as a reduction of the amounts decreed plaintiffs. The decree will be modified as herein indicated to the extent of directing a sale of the undivided interest of the Coal Company in the coal and mining rights on which the lien is reserved, instead of a sale of all the coal, and to the extent of providing that payment of the Thomas and Hugus prior liens shall be credited upon the recoveries in favor of plaintiffs in proportion to the amount of their respective recoveries, and affirmed in all other respects. The cause will be remanded for execution of the decree. Costs are awarded the Coal Company as the party substantially prevailing.

*Modified in part. Affirmed in part. Remanded.*