COMMERCIAL CREDIT COMPANY *v.* D. BARNETT *et al.*

(No. 8062)

Submitted February 20, 1935. Decided March 5, 1935.

*Strother & McDonald,* for plaintiff in error.
*Stathers & Cantrall,* for defendant in error.

KENNA, JUDGE:

The Commercial Credit Company, Inc., brought an action in assumpsit in the circuit court of Harrison County against D. Barnett, William Barnett and Emmonds Barnett. The action was based upon a promissory note payable in installments secured by a conditional sales contract upon a Packard automobile. The note was made payable to Standard Garage at the offices of Commercial Credit Company in Charleston in eighteen monthly installments of $116.00 each, and purported to be signed by D. Barnett, William Barnett and Emmonds Barnett. By special indorsement, it was transferred to Commercial Credit Company, the indorsement being signed Standard Garage, by W. J. Wanstreet. The signatures of D. Barnett and Emmonds Barnett admittedly were forged,

and, on their motion, the trial court directed a verdict in their favor. Upon submission to a jury, there was a verdict in favor of the remaining defendant, William Barnett, whose signature was admittedly genuine. This verdict the trial court set aside on motion of the plaintiff, and to that action, William Barnett prosecutes this writ of error.

There is little conflict in the evidence, and the circumstances leading up to and constituting the transaction may be summarized as follows: On December 21, 1931, William Barnett signed the note in question which represented eighteen hundred and thirty-six dollars as the balance of the purchase price of a Packard sedan, and two hundred and fifty-two dollars carrying charges. According to the conditional sales contract, in addition to the note, the purchaser made a down payment of eleven hundred and seventy-four dollars, of which six hundred and seventy-four dollars was cash, and five hundred dollars represented the value of a 1927 model Packard car traded in. At the time these papers were received by W. J. Wanstreet, doing business as Standard Garage, neither bore signatures other than that of William Barnett, the purchaser. At the bottom of the conditional sales contract is printed the following notice to the purchaser: "Important—Purchaser Read Before Signing: Purchaser sign here if Car is actually in your possession, but do not sign here unless you have actually received the Car, since by doing so you might place yourself in the position of being a party to a fraud." Appended to the conditional sales contract is a credit statement which was also signed by the purchaser. The conditional sales contract was recorded in Harrison County on December 29, 1931. Upon receiving the note and the conditional sales contract, the transaction was reported by Wanstreet to a credit association managed by one V. A. Rogerson for the purpose of having the credit rating of the purchaser investigated. This association reported to the plaintiff, Commercial Credit Company. On either the 21st or the 22nd of December, this credit reporting agency reported to the plaintiff that it could not recommend the loan with William Barnett as the sole signer of the note. The Commercial Credit Company paid for this report. At the time of the report, the note had not

been tendered to the Commercial Credit Company nor had it or the conditional sales contract been seen by any representative of that company. On December 23rd, Wanstreet left the garage in Clarksburg and went to Fairmont with the note and the conditional sales contract, and with what is called in the evidence "clearance papers" from the credit association. Neither the original report made by the credit association on William Barnett nor these clearance papers were introduced in evidence. The manager of the credit association was not called upon to testify by either side. The note was purchased by the plaintiff on December 23, 1931, and plaintiff allowed credit on its books amounting to one thousand eight hundred and sixty-six dollars, the proceeds of the note after the deduction of the carrying charges. At the time of its purchase by the plaintiff, both the note and the conditional sales contract, in addition to the genuine signature of William Barnett, bore the purported signatures of D. Barnett and Emmonds Barnett. Shortly after receiving the note and contract, plaintiff addressed a communication to William, Emmonds and D. Barnett addressed to their box at Clarksburg, notifying them that the note had been purchased by the plaintiff from the dealer. This notice contained a full description of the car by the usual identifying numbers. It contained several questions addressed to the buyer with blank places for the answers to be filled in and returned to the sender. Among these, was the question: "Did you receive a new article?" The answer to this question was: "Yes". These questions were answered and signed by William Barnett, who admits receiving the communication, under date January 9, 1932, and were returned to the plaintiff. The installment payment falling due under the note on January 21, 1932, not having been made, the plaintiff, on February 3, and February 6, 1932, addressed letters jointly to D. Barnett, Emmonds Barnett and William Barnett demanding payment. These letters were received by William Barnett, who testifies that they gave him the first information he had that the plaintiff was looking to his two brothers in addition to himself for payment. After receiving these letters, William Barnett took them to the Standard Garage on February 8th, and there confronted Wanstreet with the situation. Within approximately an hour and a half

after that time, Wanstreet shot himself and died that evening. On February 12th, Travis E. Barrack, a representative of the plaintiff, went to Clarksburg and to the Barnett home and there interviewed William Barnett, who refused to make any statement other than to admit his own signature to the note and contract, and to assert that he did not receive the automobile. William Barnett testified that he never in fact received the car described in the conditional sales contract and there is testimony to the effect that on the day of Wanstreet's death, an automobile, described as a new Packard sedan was driven away from the Standard Garage, but there is no testimony that connects the description of this car in detail with the automobile described in the conditional sales contract.

It is not thought necessary to describe the pleadings by which the points in controversy were raised. The plaintiff in error here contends that the trial court erred in setting aside the verdict in favor of the defendant, William Barnett, because the question of whether or not Commercial Credit Company was a holder in due course of the paper upon which it sought recovery was for the jury, and the jury having found that question in favor of William Barnett, the evidence is ample to sustain that finding. As a part of that contention, the plaintiff in error urges that defective title in the paper having been shown on proof of the forgeries of the names of Emmonds Barnett and D. Barnett, the burden shifted to the plaintiff to prove by a preponderance of the evidence that it was a holder in due course and that this burden has not been borne. As sustaining the contention of the plaintiff in error, he refers to Code, 46-4-9, which, in effect, provides that when defective title of any person who has negotiated the instrument is shown, then the holder must prove himself a holder in due course, or that he took from a holder in due course. The position of the defendant in error is that there is no proof to justify the submission of the case to the jury; that the burden of proof to show that it is a holder in due course never shifted to the plaintiff, but that the plaintiff, under Code, 46-4-9 (N. I. L., sec. 59), is entitled to the presumption that it is a holder in due course as against William Barnett, who, it says, became bound on the instrument prior to the

defect in title, and that there is no proof to overcome this presumption; and that, regardless of the presumption, and regardless of the question of whether the burden of proof had been shifted, the evidence in this case affirmatively shows that Commercial Credit Company is a holder in due course, entitled, as such, to enforce collection of the paper against William Barnett regardless of the two forged signatures of which it had no notice, and regardless of whether William Barnett did in fact receive the automobile purporting to have been sold to him under the terms of the conditional sales contract.

We are of the opinion that it is not necessary to fully discuss either the statutes or the decisions with reference to the question of whether the plaintiff is entitled to the presumption that it is a holder in due course, or, whether, on the other hand, the infirmity in the paper having been shown, the presumption leaves the plaintiff and the burden shifts to it to affirmatively show that it is a holder in due course. We believe that in spite of the fact of the forgeries, the plaintiff has successfully shown in this case that it received the paper without knowledge thereof and without knowledge of facts that would make its acceptance of the paper an act of bad faith. All three signatures were on the note when it was received by the Commercial Credit Company, and no representative of that company had seen the note prior to that time. The only circumstance that is depended upon as in the least degree impugning the good faith of that company in accepting the paper, is that it did, before acquiring the paper, receive the credit report in which it was recommended that the paper be not accepted with the signature of William Barnett alone. To an imaginative mind, this circumstance might have caused speculations to spring up as to why the paper was subsequently presented with two additional signatures, but even had the credit report caused actual suspicion on the part of Commercial Credit Company along this line, we are of opinion that under principles well recognized in this state it would not have been sufficient to constitute the Commercial Credit Company other than a holder in due course. The presumptions of the law are all in favor of honesty and fair

dealing, and an individual has a right to deal with his fellow-man on that basis. If that be so, then, upon receiving the credit report and subsequently having the note with three signatures on it presented to it, the Commercial Credit Company would be justified in supposing that the effect of the credit report had been communicated to William Barnett and, perhaps, to Wanstreet, and that the additional signatures had been honestly procured for the purpose of overcoming the effect of that credit report. The fact that signatures were added to the paper after the credit report was made, by itself, furnishes no reason for believing them to have been forged. To go further and to say that the Commercial Credit Company must have supposed, or must have been put upon serious inquiry to ascertain, that the two additional signatures were forged simply because it had been admonished by its credit association not to receive the note with the signature of William Barnett alone, it seems to us would be to say that banks and business men generally would have to make extensive investigation of every circumstance relating to negotiable paper in order to negative the possibility of fraud. This, of course, is not the rule. We have already pointed out that in order to constitute notice of infirmity in the instrument or of defect in title thereto, the taker must either have actual knowledge or knowledge of such facts as would make the taking of the instrument an act of bad faith. Code, 46-4-6 (N. I. L., sec. 56); *Morgan* v. *Farmington Coal & Coke Co.,* 97 W. Va. 83, Syl. Pt. 8, 124 S. E. 591; *City Bank of Wheeling* v. *Bryan,* 72 W. Va. 29, 78 S. E. 400, and *Scott* v. *Mortgage Service & Realty Company,* 110 W. Va. 574, 158 S. E. 911. Having determined therefore, that the Commercial Credit Company has shown that it is in fact a holder in due course, it follows that it may enforce the instrument according to its original tenor. Code, 46-8-6 (N. I. L., sec. 124).

The question of whether William Barnett did or did not in fact actually receive the Packard car that he purported over his own signature to have received, and later again expressly acknowledged over his signature that he had received, we do not think materially affects the question for decision, if it be conceded that the Commercial Credit Company was in fact a

holder in due course of the paper. Being such holder, it may recover regardless of the consideration that may or may not have passed between the original maker and the original payee. Code, 46-2-5 (N. I. L., sec. 28); *Mason* v. *Shaffer,* 82 W. Va. 632, 96 S. E. 1023.

For the reasons herein stated, we are of opinion that the action of the circuit court of Harrison County in setting aside the verdict in favor of William Barnett must be affirmed.

*Affirmed.*